**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Mohamed A.H.,

Petitioner,

v.

Markwayne Mullin, et al.,

Respondents.

No. 26-cv-3952 (KMM/ECW)

**ORDER**

---

This matter is before the Court on Petitioner Mohamed A.H.'s ("Petitioner" or "Mr. A.H.") Petition for a Writ of Habeas Corpus. (Dkt. 2.) Mr. A.H. claims that his continued detention following expiration of the statutory removal period violates the Immigration and Nationality Act ("INA") and his fifth amendment rights. For the following reasons, the Petition is denied.

## BACKGROUND

Mr. A.H. is a "stateless" individual born in a refugee camp in Kenya, with parents who were born in Somalia. (Dkt. 2 ¶ 1.) On December 7, 2016, Mr. A.H. entered the United States as a refugee pursuant to 8 U.S.C. § 1157. (*Id.* ¶ 2.) On May 22, 2020, Mr. A.H. was found guilty of First-Degree Aiding and Abetting Assault and sentenced to a 114-month sentence in a Minnesota Department of Corrections facility in St. Cloud, Minnesota. (*Id.* ¶ 6.) On April 11, 2023, while still in prison, Mr. A.H. was issued a Notice to Appear, placing him in full removal proceedings (*Id.* ¶ 7.) Then on June 27, 2025, an Immigration Judge ordered Mr. A.H. removed while he was still in state custody. (*Id.* ¶ 8.) Mr. A.H. was

released from state custody on March 9, 2026, and on the same day was detained by Respondents and transferred to Sherburne County Jail. (*Id*. ¶ 9–10.)

During Mr. A.H.'s immigration detention, Respondents made several attempts to secure the travel documents needed to effectuate his removal. (Dkt. 2 ¶¶ 11–15.) First, on March 14, 2026, Respondents requested travel documents from Kenya, but the Kenyan Government declined to issue such documents because, although Mr. A.H. was born in a Kenyan refugee camp, he is not a Kenyan citizen. (Dkt. 6 at 3.) Then, on March 30, 2026, Respondents requested travel documents from Somalia but received no response. (*Id.*, *see also* Dkt. 2 ¶ 11.) Next on June 15, 2026, Respondents requested travel documents from Somalia and again received no response. (Dkt. 2 ¶ 13.) Finally, on October 8, 2026, shortly after Mr. A.H. filed this Petition, Respondents filed a letter stating they had obtained travel documents for Mr. A.H. and planned to execute his removal order on or before October 22, 2026. (Dkt. 9.)

In response, Mr. A.H. filed a status report and request for expedited proceedings arguing that Respondents' letter did not properly state which country had provided the travel documents. (Dkt. 10.) The Court agreed that there was ambiguity in the record regarding the anticipated country of removal and issued a briefing order requiring Respondents to file an affidavit or declaration stating the country to which they intended to remove Mr. A.H. (Dkt. 11.)

Respondents subsequently filed a Letter (Dkt. 12) and Declaration of Deportation Officer Levi Schultz (Dkt. 13), which included evidence establishing that Respondents have obtained travel documents from the Embassy of Somalia and that an Immigration

Judge has issued an amended removal order instructing Mr. A.H. be removed to Somali or, as an alternative, Kenya. (Dkt. 13 ¶¶ 4–5; *see also* Dkt. 13-1) Mr. A.H. filed a timely response asking the Court to, among other things, strike Officer Schultz's declaration, grant his habeas petition, and order his immediate release. (Dkt. 14 ¶¶ 26, 28–29.)

**DISCUSSION**

A federal court can order the release of a person who is detained in violation of the Constitution or laws of the United States. 28 U.S.C. § 2241(c)(3). Mr. A.H. claims that he is unlawfully detained because there is no significant likelihood that Respondents can remove him in the reasonably foreseeable future. *Zadvydas v. Davis*, 533 U.S. 678 (2001).

Under the INA, when a noncitizen has been ordered removed from the United States and that removal order becomes administratively final, the government shall remove the person within a period of 90 days, which is known as the "removal period." 8 U.S.C. § 1231(a)(1)(A). The INA requires the government to detain the noncitizen during the 90-day removal period. 8 U.S.C. § 1231(a)(2). Another provision in the law provides that an "alien ordered removed who is inadmissible . . . may be detained beyond the removal period" when the Attorney General determines that the person is "a risk to the community or [is] unlikely to comply with the order of removal." 8 U.S.C. § 1231(a)(6). However, this post-removal-period detention statute does not set a limit on how long that discretionary detention authority can last. In *Zadvydas v. Davis*, the Supreme Court placed limits on how long a noncitizen may be detained after the removal period has expired. The Court recognized that "a statute permitting indefinite detention of an alien would raise a serious constitutional problem." 533 U.S. at 690. However, the Court explained that the detention

of a noncitizen subject to a final order of removal is permissible so long as the individual's removal is "reasonably foreseeable." *Id*. at 699–700. It held: (1) the detention of an individual for six months or less following a final order of removal is presumptively reasonable; and (2) after six months, if the noncitizen "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id*. at 701.

Mr. A.H. alleged that his removal period expired on June 9, 2026, 90 days after he was released from state custody. (Dkt. 2 ¶ 20.) He argued that he has rebutted any presumption of the reasonableness of his continued detention and demonstrated that there is no reasonable likelihood of removal in the reasonably foreseeable future. He therefore claims that he is entitled to an order granting his immediate release from ICE custody pursuant to *Zadvydas*. *See, e.g*., Dkt. 2 ¶¶ 29–32, 121–22. The Court disagrees.

Regardless of whether Mr. A.H. can demonstrate that the presumptively reasonable six-month period of detention recognized by *Zadvydas* has expired, or if Mr. A.H. preliminarily proffered good reason to believe that his removal is not reasonably foreseeable, Respondents have now provided sufficient evidence to rebut that showing. Respondents recently presented evidence that they acquired a valid travel document for Mr. A.H. from the Embassy of Somalia that is valid until December 28, 2026. (Dkt. 13 ¶ 4.) Respondents also attest that Mr. A.H.'s removal will occur on or before November 9, 2026. (Dkt. 16.) This, along with an amended order of an Immigration Judge, ordering Mr.

A.H. removed to Somalia or, in the alternative Kenya, is sufficient to show that Mr. A. H.'s removal is likely in the reasonably foreseeable future.[1]

**ORDER**

Accordingly, **IT IS HEREBY ORDERED THAT**:

1. The Petition for Writ of Habeas Corpus (Dkt. 2) is **DENIED.**
2. The matter is **DISMISSED without prejudice**.

**Let Judgment be entered accordingly.**

Date: October 27, 2026

*s/Katherine M. Menendez*
Katherine M. Menendez
United States District Judge

[1] Mr. A.H. argues that the Respondents have failed to provide sufficient evidence because Officer Schultz's testimony regarding the contents of the travel documents violates the Best Evidence Rule, Fed. R. Evid. 1002, and is therefore inadmissible. (Dkt. 14 ¶¶ 18–20.) The Court disagrees. And even if Officer Schultz were prohibited from testifying about the contents of the travel documents, he would still be able to testify to Respondents' possession of such documents. That testimony, under penalty of perjury, along with the modified removal order, would be sufficient to show that removal is likely in the reasonably foreseeable future.